JUSTICE COTTER,
dissenting.
¶32 I dissent from the Court’s Opinion. I would not reach Issue One. I would conclude that the District Court erred in denying Root’s motion to dismiss based upon the prosecution’s failure to disclose the Boyd video statement to Root prior to trial.
¶33 As the Court notes at ¶ 19, in order to establish a Brady violation, a defendant must establish that the State possessed evidence favorable to the defense, that the evidence was inadvertently or willfully suppressed, and that suppression of the evidence prejudiced the accused. Fish, ¶ 20. Otherwise stated, a successful Brady petitioner must demonstrate that “there is a reasonable probability” that the result of the trial might have been different had the suppressed evidence been properly disclosed. Strickler v. Greene, 527 U.S. 263, 289-90, 119 S. Ct. 1936, 1952 (1999) (citing Kyles, 514 U.S. at 434-35).
¶34 The Court maintains that because Root obtained the recording of the interview with Boyd before the conclusion of the trial, he was able to use the statement in his defense. Opinion, ¶ 27. While it is true that Root was able to elicit some of the details of Boyd’s statement to the *322 police by calling Boyd to the witness stand after the State rested, he was completely deprived of the opportunity to paint the State’s chief witness as a liar during the State’s presentation of its case. Had Root been provided with S.R.’s statement prior to trial, he could have impeached the State’s witness while he sat on the stand; instead, S.R.’s testimony was essentially uncontradicted until Root was able to call Boyd as a witness in his case. Respectfully, an effective impeachment of the State’s key witness places reasonable doubt in the minds of jurors from the outset, and therefore packs a far greater punch than a belated offer of testimony during the defendant’s case.
¶35 Boyd provided the police with many non-cumulative details about S.R., including his mother’s name and address, the names of many of his friends, the name of his girlfriend, and the nature of his interests and proclivities. As defense counsel argued, had he been possessed of this information before trial, he could have used it to impeach S.R.’s assertion at trial that he did not even know Boyd. He also could have asked S.R. about other information contained in the statement, such as the fact that Boyd met with S.R. on the day of the stabbing while S.R. was in possession of a bloody knife, and that S.R. told Boyd that Root “was just sitting around,” and did not participate in the stabbing. Defense counsel could have asked S.R about many things revealed in Boyd’s statement, had it been provided to him prior to trial as the law requires. However, he had no opportunity to utilize the valuable information contained in the Boyd statement to impeach S.R., because the statement was only provided to him after S.R. testified, and only after the State requested and the court allowed S.R. to be “permanently excused from his subpoena.”
¶36 There is no question that the State possessed evidence favorable to the defense, and that it failed to provide the evidence to Root in advance of trial. The only question remainingin the Brady analysis is whether suppression of the evidence prejudiced Root. It clearly did. Three persons were in the vehicle when the stabbing occurred — the defendant, the victim, and S.R. — and the three provided radically different versions of what occurred prior to, during and after the stabbing. One cannot state for certain that the outcome of the case would have been different had Root been provided with the Boyd statement prior to trial; however, a ftdly informed impeachment of S.R. would have surely undermined S.R.’s credibility, which was central to the State’s case,
¶37 Root’s inability to present his most persuasive case is not his fault; the fall lies clearly with the State. The Ninth Circuit has recently emphasized that “[tjhe prosecutor’s obligation under Brady is not *323 excused by a defense counsel's failure to exercise diligence with respect to suppressed evidence.” Amado v. Gonzalez, 758 F.3d 1119, 1135 (9th Cir. 2014). The court observed that the “requirement of due diligence would flip that [disclosure] obligation, and enable a prosecutor to excuse his failure by arguing that defense counsel could have found the information himself. The proposition is contrary to federal law as clearly established by the Supreme Court, and unsound public policy.” Amado, 758 F.3d at 1136 (internal citations omitted).
¶38 In addressing the “reasonable probability that the outcome of the trial would have been different” component of the Brady test, the United States Supreme Court stated: “the adjective [reasonable] is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles, 514 U.S. at 434. Root did not receive a fair trial. Had defense counsel been in possession of the Boyd statement at the time he cross-examined S.R., he could have asked S.R. pointed factual questions premised upon Boyd’s statements. Had S.R. then denied the truth of those statements, impeachment via a prior inconsistent statement would have been set, as the State itself acknowledged during the Brady arguments to the District Court. However, S.R. was long gone by the time the State provided the defendant with the Boyd statement, having been permanently released from his subpoena at the State’s request. Thus, the defendant irretrievably lost the opportunity to conduct a meaningful cross-examination and impeachment of the State’s critical witness.
¶39 We err in blithely concluding that the late disclosure of the recording did not prejudice Root. Opinion, ¶ 30. It is equally troubling that we seemingly shrug off as insignificant the State’s Brady violation. While I do not contend that the State intentionally withheld the Boyd statement until after it had rested its case, “inadvertent” suppression should not be so easily excused. As the Ninth Circuit’s Chief Judge Kozinski famously observed in 2013, “[t]here is an epidemic of Brady violations abroad in the land. Only judges can put a stop to it,” United States v. Olsen, 737 F.3d 625, 626 (9th Cir. 2013) (Kozinski, J., dissenting). I would conclude that the District Court erred in denying Root’s motion to dismiss based upon the prosecution’s Brady violation, and I therefore dissent from the Court’s Opinion.
JUSTICES MCKINNON and SHEA join in the dissent of JUSTICE COTTER.